Union Surety & Guaranty Co. v. Tenney.

---

## Union Surety & Guaranty Co. v. Horace K. Tenney et al.

1. PRACTICE—*Trying Causes out of Their Regular Order on the Docket.*—Where a party moves to have a cause passed till another day, he impliedly consents to a trial on the day to which it is passed, or as soon thereafter as it may suit the convenience of the court, in view of the business pending before it.

2. EVIDENCE—*Copies of Letters, When Admissible.*—Letter-press cop-

ies of correspondence between parties litigant, when the party offering them gives notice to his adversary to produce the originals on the trial, and proves that such originals were dictated by him and sent by mail to such party in the usual course of business, are admissible.

3. APPELLATE COURT PRACTICE—*Objections Which Come Too Late.*— An objection that there is no evidence that certain letters, copies of which are offered in evidence, were deposited in the mail, if not made in the trial court can not be availed of in the Appellate Court.

4. ATTORNEYS AT LAW—*What is Prima Facie Evidence of a Retainer by a Corporation.*—Where a letter from a person signing himself as the secretary of a corporation, to a firm of attorneys, unequivocally admits the retainer of such firm, such letter is, *prima facie,* the letter of the corporation.

5. SAME—*Recovery for Services Rendered.*—Where an attorney is not employed for a definite time and is discharged, or where complete performance on his part is rendered impossible or prevented by his client, he may recover for services rendered.

6. SAME—*Suits for Retaining Fees.*—A suit for a retaining fee, which the client has agreed to pay and admitted to be due, may be maintained.

**Assumpsit,** for attorney's fees. Appeal from the Superior Court of Cook County; the Hon. GEORGE W. PATTON, Judge presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed May 5, 1902.

**Statement.**—The appellant is a New York corporation and appellees are practicing attorneys at law and partners in the profession. Prior to June, 1899, there occurred an interview in the city of New York between S. P. McConnell, one of the appellees, and Frederick B. Esler, vice-president of appellant, in reference to the appellant going into the suretyship business in the city of Chicago. June 27, 1899, appellant, by its vice-president, wrote to Mr. McConnell, reminding him of an interview with him on the subject, and stating that the company was anxious to begin the suretyship business in Illinois, and would prefer to talk with him in New York, but that if McConnell was not coming to New York soon, he, Esler, would either come to Chicago or write to him. Answering this letter June 29, 1899, McConnell informed Esler that he might not have any occasion to visit New York, but could probably arrange to do so, and that he was contemplating going to London the 20th of the next month. July 5, 1899, Esler wrote to

McConnell, again expressing anxiety to commence business in Illinois, and to have a proper local manager, and three or four persons to act as a local board of directors, and stating that he was not familiar with the requirements of Illinois beyond the requirement that the company must have a capital of $250,000, which it had, and a surplus of $86,000, and requesting suggestions from McConnell. Subsequently to the date of the last letter, fourteen letters passed between Esler and McConnell, the last being a letter from McConnell to Esler, of date October 21, 1899. This correspondence was mainly as to the selection of a manager and a local board of directors, what was necessary for appellant to do, in order to procure a license to do business in Illinois, etc. Esler wrote to McConnell the following, among other letters:

"NEW YORK, October 6, 1899.

HON. S. P. McCONNELL:

Confirming our interview to-day on behalf of Union Surety & Guaranty Company, I propose that you take in hand organization and direction of Chicago office of company. We will enter into an arrangement that you shall receive twenty-five per cent of gross premiums paid for bonds in Illinois; that out of that twenty per cent the advance to whoever you select as general manager, and the office expenses shall be met, and that the Union Surety & Guaranty Company will authorize expenditure of $6,000 a year, payable monthly, to cover the incidental expenses and office rent and advance to manager. Should commission on receipts not equal that sum, company will still advance it. Your suggestion of Mr. Smith as manager meets with approval here, but in this matter, as in everything else in Chicago, we prefer to rely upon your judgment. We believe field in Chicago fertile one, and business still in its infancy; that with your influence and the active work of manager you suggest, with proper board of local directors, company will get its full share business. Trusting proposition meets with your approval, I am, etc.,

FREDERICK B. ESLER, Vice-President."

Prior to the writing of this letter, McConnell had suggested to Esler the appointment of Mr. Perry H. Smith as manager of the business in Chicago.

"NEW YORK, October 16, 1899.
HON. S. P. McCONNELL:

At your suggestion I repeat the proposition I made in my letter of October 6, 1899, in a slightly modified form. It will now read: On behalf of Union Surety & Guaranty Company I propose that you take in hand organization and direction of Chicago office of that company. We will enter into an agreement that you shall receive twenty-five per centum of gross premiums paid for bonds in Illinois; out of that twenty-five per centum advance to manager and office expenses shall be met. The Union Surety & Guaranty Company will authorize expenditure of $6,000, payable monthly, to cover incidental expenses, office rent and advance to manager. You are to name the general manager. This agreement to last for a term of three years, and should the percentage on receipts of the company coming to your office not equal $6,000 a year, company will advance difference. Your suggestion of Mr. Smith as manager meets approval of board here. Believe field in Illinois fertile; that with your influence and work of manager whom you suggest, with proper board of local directors, company will get its share of business. Trust proposition meets with your approval, etc.

FREDERICK B. ESLER,
Vice-President."

"NEW YORK, October 20, 1899.
S. P. McCONNELL:

Am glad to know Smith is ready to take hold; soon as made up shall send necessary papers to enable business to be carried on Illinois. Had you not better have a form of contract made up between this company and Smith.

FREDERICK B. ESLER."

The following letter was written by McConnell to Esler:

"OCTOBER, 1899.
FREDERICK B. ESLER, Vice-President,
    290 Broadway, New York, N. Y.

Have given proposition in your letter 16th careful consideration and talked matter over with my partners; agreement proposed by you should be between your company and Smith, provide substantially as you suggest—that he may retain twenty-five per cent of the gross premiums paid for bonds furnished by the company in this State. Out of this twenty-five per cent reservation I think it should be provided that fifteen per cent should be retained by him to

cover his services as manager and all office expenses, rent, etc., and the other ten per cent should be paid to my firm for counsel fees. It should be further provided that if the fifteen per cent premiums thus reserved for the manager's services and his expenses should fail to furnish a fund equal to $3,000 a year for the manager and his office expenses, etc., then your company should advance the difference, it being understood that your liability for such advances shall not exceed in any one year $6,000, and it being further understood manager may draw each month for such difference as may be shown by the previous month's business. Smith would want this provision so as to insure him at least $250 per month to live on. In addition to above we would want you to advance to us for a retainer and on account of services, $1,000. For this fee we would agree to render all necessary services as counsel for the first six months of the business here, which you can readily see would be considerable, and as an off-set on this fee we would account to you for the ten per cent provision of premiums for counsel fees up to the amount of $1,000 for that period. We do not feel like entering upon it without a provision for a moderate fee to begin with. After company is thoroughly launched here there will be a certain amount of continuous legal work for us to perform by way of counsel, advice and opinion to the manager, and the percentage basis will undoubtedly later on provide most satisfactory compensation both so far as you are concerned, but you can easily appreciate that during first six months or so the percentage would be likely to be small, whereas the necessity for our services, and the time that we will necessarily devote to the matter during that period will be considerable. If these suggestions strike you favorably let us know and we will draft contract on lines proposed and send it on for your further consideration.

S. P. McCONNELL."

Then ensued a correspondence between Esler and Tenney, McConnell, Coffeen & Harding, appellees. In a letter of November 8, 1899, Esler, addressing the appellees, wrote that he wrote to them, by arrangement with McConnell, in relation to establishing an office in Chicago; that he had been unable until then to get the executive committee's approval to the slight change in the proposition; that, in conversation with McConnell, it was agreed that he, the writer, should ask appellees to draw a contract between

appellant, the Union Surety & Guaranty Co., and Mr. Smith, providing that Smith should receive twenty-five per cent of the premiums paid for surety bonds in Illinois, from which the office, legal and general expenses should be met, the company to guarantee a minimum of $6,000, and authorize Smith to draw on the company the first of each month for expenses of the preceding month, and that a fee of $1,000, out of said fund, should be paid to appellees in advance, etc. November 11, 1899, appellees wrote to Esler a letter containing the following:

"November 11, 1899.
To Frederick B. Esler, Vice-President,
290 Broadway, New York:
We are in receipt of yours of 8th, requesting us to prepare a contract between your company and Mr. Smith on terms suggested by you. We received a letter from Judge McConnell a day or two before your letter came notifying us of his conversation with you and suggesting the terms agreed upon, which practically amount to the same arrangement as stated by you, except with reference to the fee of $1,000 to be paid to us at the present time. You state that your guarantee for Mr. Smith's services and expenses shall be a minimum sum of $6,000 per year, and that the $1,000 fee to be paid to us now is to be charged against this fund. According to the memorandum furnished to us by Judge McConnell, the guarantee is to cover a salary of $3,000 per year to Mr. Smith, payable $250 per month, and $3,000 for his general expenses, our retainer to be an outside matter. Smith is agreeable to terms of draft herewith enclosed."

The letter requests return of draft of contract with Smith, if satisfactory, for Smith's signature, etc. In answer to the last letter Esler wrote as follows:

"New York, November 15, 1899.
To Tenney, McConnell, Coffeen & Harding,
Chicago, Illinois:
Your favor of November 11th was considered by executive committee yesterday, for the reason that it was a modification of what had been agreed upon. It was our understanding that the total expenses to which this company would be put in the way of a guarantee would be $6,000 a year, which was to include expenses of all kinds. We are perfectly willing to advance the fee of $1,000 sug-

gested, and will deduct it from the $6,000 to be paid at the rate of $100 a month, so that for the first ten months the drafts on this company are to be $400 instead of $500.    I send back the contracts modified in accordance with this and executed by us, so that if satisfactory to you and to Mr. Smith, they may be executed by him and returned to us. The statement to the bank superintendent in the insurance department of Pennsylvania is forwarded to him to day, so that you may expect to get it by the end of this week.

FREDERICK B. ESLER, President."

November 17, 1899, appellees wrote to Esler, enclosing the contract between appellant and Smith, executed by both parties, which is as follows:

" Memorandum of agreement between The Union Surety & Guaranty Company of Philadelphia, Pennsylvania, and Perry H. Smith of Chicago, witnesseth :

" Whereas, The Union Surety & Guaranty Company is about to establish and maintain an office in the city of Chicago, for the conduct of its business in the State of Illinois, and for that purpose has agreed to, and does hereby appoint said Perry H. Smith its general agent to carry on and have the general management, control and prosecution of said business within the State of Illinois, subject to the general management and control of the board of directors of said company.

" Now, therefore, in consideration of the premises, it is mutually agreed between the parties hereto, as follows:

" First.    Said Perry H. Smith accepts such appointment as general agent for the State of Illinois, and agrees to devote his entire time, skill, energy and ability to the prosecution of the business of said company in the territory above named; to procure a well located office, suitable to the conduct of the business of the said The Union Security & Guaranty Company, furnish and equip the same, and from time to time provide the necessary help which may be required to properly conduct said office, and provide for the general expense of maintaining and operating the same for the period hereinafter provided for.

" Second.    In consideration of the faithful performance of the covenants and agreements herein contained by and on the part of the said Perry H. Smith, it is further agreed that said Smith shall have and retain twenty-five (25) per cent of all premiums paid for surety bonds furnished by said The Union Surety & Guaranty Company in the State

of Illinois, or elsewhere, if the issuing of such bonds shall be procured by or from said Chicago office; out of which fund so created said Smith shall pay all office, legal and general expenses connected with said Chicago office incurred by him, it being distinctly understood and agreed, and as a further consideration moving to said Smith from said The Union Surety & Guaranty Company, that his agreement to meet all said expenses is conditioned upon the agreement and guaranty of said The Union Surety & Guaranty Company to furnish and pay to said Smith for his services and expenses, either from said commission fund of twenty-five (25) per cent, or in case such commissions shall not amount to enough, the difference to be paid in cash, five hundred dollars per month—two hundred and fifty dollars for himself and two hundred and fifty dollars for office, legal and other expenses.

" It is further agreed that on the 15th day of each and every month of the period covered by this contract, the said Smith may draw, payable on demand, upon said The Union Surety & Guaranty Company for an amount equal to the difference between the aggregate amount of twenty-five (25) per cent of the premiums paid during the preceding month, and said guaranteed sum of five hundred dollars per month for services and expenses.

" Third.    It is further understood and agreed between the parties hereto that the law firm of Tenney, McConnell, Coffeen & Harding, of Chicago, shall be retained as general counsel and attorneys for said The Union Surety & Guaranty Company in and for the State of Illinois, their services and expenses to be paid from the commissions hereinbefore specified.    A retainer of $1,000 shall be paid said law firm at once, and deducted from the advance on commissions at the rate of $100 per month.

. " Fourth.    The period covered by this contract shall be three years from November 15, 1899.

    Duly executed this 15th day of November, 1899.

THE UNION SURETY & GUARANTY COMPANY.<br>
JAMES A. ROBERTS,<br>
President.

Attest:    J. J. MASON, Secretary.

PERRY H. SMITH, JR."

Several letters passed between Esler and appellees after the execution of the above contract, in reference to preparing and forwarding from New York the documents necessary to obtain a license to do business in this State, which

papers, when forwarded, appellees submitted to the Superintendent of Insurance of this State, and which the superintendent returned, suggesting certain amendments, and appellees sent copy of the superintendent's letter to Mr. Van Schaick, appellant's attorney, who had prepared the papers. In a letter from appellees to Esler, of date December 20, 1899, appellees informed Esler of the return of the papers to Van Schaick and enclosed their bill for "retainer as agreed, $1,000."

December 29, 1899, Esler wrote to appellees, informing them that they expected the papers from Harrisburg that day and that they would be forwarded that night.

December 30, 1899, Esler wrote to appellees, excusing delay in answering their letter of December 20th, and writing, among other things, the following:

"Messrs. Van Schaick, Quimby and Norton received the amended papers yesterday morning and mailed them to you. I presume you have received them. The check for your fee will be mailed as soon as the treasurer returns from Philadelphia, which will be Tuesday next," etc.

Later appellees received the following letter:

"NEW YORK, January 3, 1900.

TENNEY, McCONNELL, COFFEEN & HARDING, Chicago, Ill.

Your favor 20th ultimo, addressed to our vice-president, Mr. Esler, and in which you enclosed bill for $1,000, due to you as a retainer, is received.

We have not been able to give this matter our attention before, owing to rush of business incident to closing of year and to delay which has been encountered in receiving and filing necessary papers to meet requirements of insurance department of your state. We are advised by our counsel that the necessary papers, including resolutions passed at a meeting of board to-day, to enable this company to begin business at once in Chicago are now being prepared by our treasurer and will be sent you immediately.

In the matter of the payment of your bill for $1,000 we beg to advise you that this will receive our immediate attention as soon as we are advised that the company has been admitted by the insurance department to do business in Chicago. Trusting this delay will not cause you any inconvenience, we are, etc.,

J. J. MASON, Secretary."

February 19, 1900, Secretary Mason again wrote to appellees, stating that the financial statement required by the Illinois Insurance Department was prepared, that it was somewhat different from that previously sent to appellees, and requesting, for that reason, the return of all papers previously sent to appellees. February 24, 1900, appellees wrote to appellant enclosing the papers, and February 27, 1900, Mason, appellant's secretary, wrote to appellees, acknowledging receipt of the papers, and stating: "All these matters will receive our prompt attention after our annual election on March 1st," etc. April 2, 1900, appellees wrote to appellant, again requesting payment of their bill, and April 11th next following Van Schaick wrote the following letter:

"APRIL 11, 1900.

JUDGE S. P. McCONNELL,
          Care Tenney, McConnell, Coffeen & Harding :
   We have letter of your firm of April 2, and would consider it a favor if you would kindly call at this office when you next come to New York, when I have no doubt we can come to an agreeable understanding in the matter.
                    EUGENE VAN SCHAICK, Chairman."

December 13, 1900, appellees again wrote to appellant in respect to their bill, and the correspondence then ceased. Appellant never replied to the last mentioned letter of appellees, nor did it ever return to appellees the papers which appellees had furnished to it for amendment, by its request. It appears from evidence introduced by appellant that appellant forwarded the papers necessary to obtain license to certain persons in the insurance business in Chicago, who subsequently represented appellant in an application for a license to do business in Illinois, and that, on such application, a license was issued to appellant about May, 1901.

Van Schaick, appellant's witness, chairman of its executive committee, and its general counsel, testified that the real reason for requesting the return by appellees to appellant of the original papers, was that the application to do business in Illinois was withdrawn, as appellant had become

dissatisfied with Mr. Smith and desired to drop the matter for the time being. It appears from the record that March 4, 1901, appellant procured from Mr. Smith a general release, on payment to him of $1,250.

At the conclusion of all the evidence the defendant's attorney moved the court to instruct the jury to find the issues for the defendant, which motion the court overruled. The jury, by peremptory direction of the court, found the issues for appellees and assessed appellees' damages at $1,000, and judgment was rendered on the verdict. The declaration was in assumpsit and was accompanied with an affidavit that $1,000 was due, and appellant pleaded the general issue, accompanied with an affidavit of merits to plaintiff's demand, except as to $150 thereof.

CHARLES B. OBERMEYER, attorney for appellant.

JAMES H. WILKERSON, attorney for appellees; EDWIN M. ASHCRAFT, of counsel.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellant's counsel object, first, that the case was tried out of its order; second, that certain evidence was improperly admitted; third, that prior to any contract between appellant and appellees in respect to the retaining fee sued for, the relation of attorney and client existed between the parties, and therefore it devolved on appellees to prove that the alleged retaining fee was fair and reasonable; fourth, that Mr. Smith, if any one, is liable. It appears from the record that June 12, 1901, on motion of appellant, an order was entered allowing appellant to withdraw a demurrer which it had filed to the declaration, and to plead instanter; that June 21, 1901, on motion of appellant, an order was entered that the cause be passed till July 8, 1901; that at last date, on appellant's motion, it was ordered that the cause be passed till July 15, 1901, and July 16, 1901, a jury was impaneled in the cause.

We think it clear that each time appellant moved to have the cause passed till another day, it impliedly con-

sented to a trial on the day to which it was passed, or as soon thereafter as it might suit the convenience of the court, in view of pending business. The objections to evidence were as to certain letters written by appellant's vice-president,. Esler, to appellees, and to letter-press copies of letters written by appellees to Esler as vice-president of appellant. Appellees, as appears from the bill of exceptions, gave appellant specific notice to produce, on the trial, the letters of which letter-press copies were introduced in evidence, and appellant's attorney stated on the trial that he had been informed by his client that search had been made for letters addressed to Esler, and that appellant was unable to find them. That they had been received was not denied. Appellant's counsel, as copies of appellees' letters to vice-president Esler were introduced in evidence, objected to some of them generally, and to others as not the best evidence, and that no foundation had. been laid for secondary evidence. Appellee Coffeen testified that the letters which went from appellees' office were dictated by him, and were sent by mail to Esler or the corporation in the usual course of business.

Counsel for appellant say, in their printed argument, that there is no evidence that the letters to Esler were ever deposited in the mail. This objection, even if not contradicted by the testimony of Coffeen, could not be availed of now, because no objection sufficiently specific to include it was made in the trial court. It may be said, generally, as to the letters, that the internal evidence of the correspondence is, that Esler and the appellant received appellees' letters. The letter-press copies were properly admitted in evidence.

No objection was made to any letters from Esler to appellees, except that any letter of his making any contract selecting an agent or employing appellees as counsel, was objected to, on the ground that by appellant's by-laws he could not make such contract, which objection will be hereinafter considered. It conclusively appears from the evidence, as we think, that appellees were not employed as

appellant's attorneys or counsel prior to or about the time of their drafting the contract of November 15, 1899, and although prior to that time Mr. McConnell had performed some services for appellant, such services seem to have been performed, not as appellant's attorney, but, perhaps, with the expectation or hope that his firm would be employed by appellant in the event of appellant's establishing business in Chicago. Nothing is claimed on account of such services by appellees, who, on the trial, stated that they relied solely on the agreement to pay them, in advance, $1,000 as a retaining fee. Counsel for appellant claim that notwithstanding appellant, without any fault on the part of appellees, withdrew its application for license, severed its connection with Smith by paying him $1,250, ceased to do any business with appellees, and turned over the business to others, while appellees were not only ready and willing but anxious to go on with any business pertaining to the subject-matter of the contract with Smith which appellant might intrust to it, appellees can not recover the amount of their agreed retaining fee. The agreement with Smith, although released, in so far as he is concerned, is not ineffective as to appellees, and that agreement specifically provides:

" It is further understood and agreed between the parties hereto, that the law firm of Tenney, McConnell, Coffeen & Harding shall be retained as general counsel and attorneys for said Union Surety & Guaranty Company in and for the State of Illinois, their services and expenses to be paid from the commissions hereinbefore specified. A retainer of $1,000 shall be paid said law firm at once and deducted from the advance on commissions at the rate of $100 per month."

Who was to retain appellees and who to pay them? Manifestly appellant. It is provided in the agreement, that Smith, on the 15th of each month, should draw on appellant, payable on demand, for an amount equal to the difference between twenty-five per cent of the premiums paid during the preceding month and the guaranteed sum of $500 per month. The retainer was to

be paid at once, in advance. Clearly, Smith could not so pay it, because he had not commenced business. Appellant was to pay it in advance, and subsequently deduct it from moneys to be paid Smith on commissions, as provided by the contract. This is what was intended by the parties before the contract between appellant and Smith was drafted, as evidenced by appellees' letter to Esler of November 11, 1899, and his letter to appellees of November 15, 1899; and the contract was construed by both parties in accordance with this intention, as evidenced by appellees' letter of December 20, 1899, to Esler, enclosing their bill for retainer; Esler's letter to appellees of December 30, 1899, acknowledging receipt of appellee's letter, and containing the words, "The check for your fee will be mailed as soon as the treasurer returns from Philadelphia, which will be Tuesday next;" and the letter from Mason, appellant's secretary, to appellees, of date January 3, 1900, stating:

"In the matter of the payment of your bill for $1,000, we beg to advise you that this will receive our immediate attention as soon as we are advised that the company has been admitted by the insurance department to do business in Chicago."

That the company was not so admitted until afterward, when appellant, without any apparent cause, so far as appellees are concerned, placed the matter in other hands, is certainly not appellees' fault. The contract was not only intended, in fact, to guarantee a retaining fee to appellees of $1,000 in advance, but such is its plain meaning, and so it has been construed by appellant and appellees.

The declaration contains a count on an account stated, and we are of opinion that the letters last referred to sustain that count. 2 Greenleaf on Ev., 13th Ed., Sec. 126; 1 Jones on The Law of Evidence, Secs. 51 and 289; Weeks on Attorneys, pp. 553-4.

But it is contended that Esler had no authority to write the letter of December 30, 1899, admitting the retainer to be due, because of the following by-laws of appellant:

"The vice-presidents are to perform such duties as are

assigned to them by the president. In case of the death, absence, or incapacity of the president, his powers shall be exercised as far as needful and his duties discharged except as far as otherwise provided in these by-laws by the first or second vice-president in the order of their nomination.

He shall also have power to nominate and appoint all such employes, agents and clerks as he may find necessary to transact the business of the company. Such nominations, and appointments shall be subject to the ratification of the executive committee and the board of directors."

Van Schaick testified that during the correspondence between Esler and appellees, Mr. Roberts, the president, was daily in his office.

That vice-president Esler was the active agent of the appellant in negotiating with reference to the establishment of appellant's business in Chicago, is evident from the correspondence between him and appellees, and that what he had done prior to the execution of the contract between appellant and Smith was assented to by appellant's president, is evidenced by the signature of the president to that contract, which merely expresses the result of the correspondence between Esler and the appellees. The execution of that contract by appellant's president, the contract being in accordance with the correspondence between Esler and appellees, is evidence that the transaction of the business, as to establishing a branch in Chicago, was committed by the president to Esler, the vice-president.

The fact testified to by Van Schaick, that the president was in his office daily, tends, as we think, to prove that he knew what Esler was doing in relation to the business in question. But what have counsel to say of the letter of Secretary Mason, dated January 3, 1900, which unequivocally admits the retainer? *Prima facie*, the letter of a secretary of a corporation, signed as secretary, as Mason's letter is, is the letter of the corporation, and there is not a particle of evidence that Mason's letter was unauthorized.

Appellant's counsel cite text writers to the effect that when an attorney is not employed for a definite time and is discharged, or where complete performance on his part is rendered impossible or prevented by his client, he may

recover for prior services rendered. The citations are not in point. This is not a suit for past services, but for a retaining fee, which appellant agreed to pay, has admitted to be due, and payment of which it has attempted to avoid by means certainly not creditable. That a suit may be maintained for a retaining fee is substantially held in Schnell v. Schlernitzauer, 82 Ill. 439.

The appellant's evidence was wholly insufficient to sustain a verdict in its favor, and we think the court properly instructed the jury to find the issues for appellees and to assess appellees' damages at the sum of $1,000. Under the pleadings and appellant's affidavit of merits, which went only to the excess over $150 of the claim of appellees, appellant was entitled to judgment for $150 in any event (Practice Act, Sec. 36), and in the written motion for a new trial, filed by appellant, it is not objected that the damages are excessive.

The judgment will be affirmed.